UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL BROADWAY                                                   PLAINTIFF

v.                                                                 CIVIL ACTION NO. 3:09-CV-976

SYPRIS TECHNOLOGIES, INC.                                    DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of defendant Sypris Technologies, Inc. ("Sypris") for summary judgment (DN 11). For the reasons set forth herein, the defendant's motion will be **GRANTED**.

### BACKGROUND

Plaintiff Michael Broadway ("Broadway") began working as a finisher for Sypris in October 2004. He moved to a job as a press operator shortly thereafter.

Between July 2005 and September 2007, Broadway received at least 13 disciplinary warnings for being absent from or late to work. In October 2007, Broadway accumulated his tenth unexcused absence in a 12-month period. Pursuant to the Sypris attendance policy, Broadway could have been fired for this offense, and Broadway was suspended pending termination.[1] However, Sypris allowed Broadway to execute a "Last Chance Agreement" in lieu

---

[1] Sypris uses a "point" system when determining its disciplinary response to employee absences. Employees receive one point for every full or partial day missed. Half points are assessed for late arrivals or early departures of less than one hour. Sypris Attendance Policy (DN 11-8). Points are not assessed, however, for certain excused absences, such as absences due to union business, company injury, jury duty, and leave covered by the Family and Medical Leave Act, provided the employee applies for and is granted the leave in accordance with company policy. *Id.*

continue...

of being fired. In the Agreement, Broadway agreed that he would be discharged without recourse to any union grievance procedure in the event he missed any work in the next six months. Broadway apparently did miss a day during that period, and Sypris notified him of its intent to fire him as a result of the missed day. After holding a hearing on the matter,[2] however, Sypris concluded that Broadway's supervisor had actually approved the day off, and therefore did not terminate Broadway at that time. Broadway continued to experience attendance problems, and received five disciplinary warnings for absences or lateness during 2008.

On August 28, 2008, Broadway filed for leave from work pursuant to the Family and Medical Leave Act (FMLA), citing the need to receive treatment for severe depression. Sypris approved Broadway's leave request, but only to the extent that he needed to miss work for therapy appointments. Broadway, however, did not report to work at all from September 3, 2008 to November 7, 2008. On October 29, 2008, Sypris sent Broadway a letter informing him that his leave was unauthorized and that he needed to return to work within 48 hours. Broadway apparently did not report to work, and Sypris sent him a letter on November 6, 2008 informing him that he would be terminated. Broadway then filed a grievance, and Sypris eventually agreed not to terminate Broadway provided he could produce documentation showing that he had been

---

[1]...continue
Employees who accumulate six or more points receive a series of warnings. Those who reach nine points receive a "Final written warning," and those who reach ten points in a 12-month period are subject to termination. *Id.*

[2]Pursuant to its collective bargaining agreement with Broadway's union, Sypris employs a three-step process in termination proceedings: Sypris first issues a letter of intent to take action. The employee and the union may respond, and a hearing is held. After the hearing, Sypris makes a final determination.

unable to work during his absence. Broadway provided the documentation, and continued to work at Sypris.

Broadway also suffered three work-related injuries during his time at Sypris. Broadway injured his groin in August 2005, and filed for and received workers' compensation benefits for the injury. Broadway re-injured his groin in April 2007, and again filed for and received workers' compensation benefits for the injury. Finally, in January 2009, Broadway suffered a shoulder injury while removing scrap material from a hopper. On February 11, 2009, Broadway missed a doctor's appointment that was described as a "fit-for-duty exam" related to his workers' compensation claim. Broadway apparently did not notify either the doctor or Sypris that he did not plan to attend the appointment, and Sypris then decided to terminate Broadway for "failure to comply." Broadway, however, filed a grievance. While the grievance was pending, he went to the doctor and was cleared to return to his regular duties. Following a hearing, Sypris reinstated Broadway as an employee effective March 2009.

During the week of February 16, 2009, however, Sypris entered a layoff period. A number of employees, including Broadway, were laid off. At the time of the layoff, employees were told they would be recalled if work became available. In April 2009, Sypris decided to recall Broadway effective May 4, 2009. Sypris first attempted to reach Broadway by phone. Broadway did not answer, but a Sypris employee left a message informing Broadway of his recall date. After Broadway did not return the call, Sypris sent a letter to him via certified mail. It was not claimed at Broadway's home address or at the post office. Broadway did not come to work on May 4, and was discharged on May 6, 2009 for failure to report.

Broadway initially sued Sypris in Jefferson County, Kentucky Circuit Court on February 20, 2009, claiming retaliation as the result of a disability, retaliation for filing a workers' compensation claim, wrongful discharge in violation of public policy, and intentional infliction of emotional distress. Because this complaint pre-dated Broadway's May 2009 termination, it appears that this action was initially based on the February 2009 firing, which Sypris later reversed. However, the case was not dismissed even after Broadway was reinstated, and Broadway filed an amended complaint in Jefferson Circuit Court in November 2009, several months after his final termination. In the amended complaint, Broadway reiterated his earlier claims and added a claim for retaliation for taking FMLA leave. Sypris removed the action to this court in December 2009.

Sypris now moves for summary judgment on Broadway's claims.

**ANALYSIS**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact arises when there is "sufficient evidence on which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The disputed issue need not be resolved conclusively in favor of the non-moving party, but that party must present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The evidence presented must be construed in the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

**I. Violation of KRS § 342.197**

KRS § 342.197(1) provides that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful" workers' compensation claim. To establish a violation of this statute, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he was discharged, and (3) there was a connection between the protected activity and the discharge. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (6th Cir. 2001) (citation and quotations omitted). To establish a "connection" under the third element of this test, the employee must show that the workers' compensation claim was a "substantial and motivating factor but for which the employee would not have been discharged." *First Property Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993).

Sypris argues that summary judgment is proper because Broadway cannot show that his workers' compensation claim was a substantial and motivating factor in his discharge. Broadway, however, argues that circumstantial evidence demonstrates that he was fired for pursuing a workers' compensation claim. Specifically, he claims that he had an "unblemished" employment record prior to filing for workers' compensation, but that Sypris began assessing attendance "points" and citing him for disciplinary violations thereafter. Thus, he claims there is at least a question of fact as to whether his workers' compensation claims were a motivating factor in his termination.

Broadway's arguments might carry some weight if the reason offered for his termination was the accumulation of too many "points" or other disciplinary violations. But the record shows that although Broadway was nearly terminated several times for absenteeism or other disciplinary issues, Sypris ultimately retained him as an employee. The termination notice sent to

Broadway states that Broadway's firing was due to his failure to return to work after being recalled from the layoff. The notice does not mention disciplinary problems, "points," or any workers' compensation claim. Moreover, Broadway does not deny that he failed to return to work at the designated time after the layoff or that such failure to return was a fireable offense. It thus appears from the record that Sypris had a nondiscriminatory reason to fire Broadway that was utterly unconnected with his workers' compensation claims. Accordingly, summary judgment for Sypris is appropriate on this count.

**II. FMLA Violation**

An employer may not discriminate or retaliate against an employee due to that employee's exercise or attempted exercise of his rights under the FMLA. *See* 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(c). To prevail on a claim for FMLA discrimination, an employee must prove (1) that he engaged in conduct protected by the Act; (2) that the defendant was aware of this exercise of protected rights; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Saroli v. Automation & Modular Components*, 405 F.3d 446, 451 (6th Cir. 2005).

Broadway supports his retaliation claims by pointing out that Sypris discriminated and retaliated against him by asking him to submit additional medical documentation in October 2008 and by disciplining him after he failed to return from his leave.[3] Where, as here, a plaintiff

---

[3] Broadway states that Sypris assessed an attendance "point" against him for failing to appear at an FMLA doctor visit. However, the letter Broadway submits in support of this assertion states that Broadway was being terminated for failing to return from his unauthorized leave when told to do so. The record does not indicate that Broadway was assessed any "points" as the result of his FMLA leave.

relies on indirect evidence of discrimination to underscore a retaliation claim, courts in the Sixth Circuit apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Under *McDonnell Douglas*, Broadway must first prove a prima facie case of discrimination. The burden then shifts to Sypris to articulate a legitimate, nondiscriminatory reason for Broadway's discharge. If such a reason is articulated, then Broadway has the burden of showing that the reason is in reality a pretext to mask discrimination. *See id.* (citations omitted).

We are not convinced that Broadway has set forth a prima facie case of discrimination. He has offered little, if anything, to show any causal connection between the FMLA leave he took in late 2008 and his firing approximately six months later. Moreover, even if Broadway had made a prima facie showing of discrimination, Sypris has articulated a legitimate, nondiscriminatory reason for Broadway's discharge: Broadway failed to return to work after the layoff period ended in May 2009. Broadway has offered nothing to show that this reason was in any way a pretext. Sypris' motion for summary judgment on this claim will therefore be granted.

In his response to Sypris' motion for summary judgment, Broadway also argues that he has presented evidence sufficient to support a claim for "interference" with his FMLA rights. To prevail on an interference claim, a plaintiff must establish that (1) he is an "eligible employee"; (2) the defendant is an "employer"; (3) the employee was entitled to leave under the Act; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee benefits to which he was entitled. *Saroli*, 405 F.3d at 454. Here, Broadway has not argued that he was denied any FMLA benefits to which he was entitled; rather, his entire case

focuses on the actions Sypris allegedly took *after* he was granted FMLA leave. Thus, his interference claim fails.

### III. Disability Discrimination/Intentional Infliction of Emotional Distress

Broadway does not object to Sypris' motion for summary judgment on his claims for disability discrimination and intentional infliction of emotional distress. Sypris' motion will therefore be granted with respect to these claims.

### IV. Wrongful Discharge in Violation of Public Policy

The parties did not address the merits of Broadway's common-law wrongful discharge claim in their summary judgment briefs. It appears to the court that this claim is preempted. Under Kentucky law, "preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010). Here, the only well-defined public policies mentioned anywhere in Broadway's pleadings are the Kentucky workers' compensation statutes, the Family and Medical Leave Act, and the Kentucky Civil Rights Act, all of which provide their own causes of action and remedies. It thus seems that Broadway's wrongful discharge claim should not go forward.

Because the parties did not raise this issue, however, summary judgment on it is not appropriate. But because all federal claims in this case have been dismissed, this court will dismiss this claim without prejudice pursuant to 28 U.S.C. § 1367(c).

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment will be granted with respect to Broadway's claims for workers' compensation retaliation, violation of the FMLA, disability discrimination, and intentional infliction of emotional distress. The plaintiff's wrongful discharge claim will be dismissed without prejudice. A separate order will issue in accordance with this opinion.